HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

R.D., a minor, by and through her personal representatives, CATHERINE DAVIS and SEAN DAVIS; and CATHERINE DAVIS, individually; and SEAN DAVIS, individually,

Plaintiffs,

v.

LAKE WASHINGTON SCHOOL DISTRICT, a municipal corporation,

Defendant.

Case No. 2:18-cv-01009 RAJ

**ORDER**

## I. INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment. Dkt. # 18. For the reasons below, the Court **GRANTS in part** and **DENIES in part** Defendant's motion.

## II. BACKGROUND

Plaintiff R.D. suffers from a genetic mutation that causes Chilblains—a condition that causes her skin to crack, ulcerate, and become necrotic when she is overly exposed to cold or damp conditions. Dkt. # 39, ¶ 71. When R.D. started kindergarten at the Carl Sandberg Elementary School (CSES) in 2012, her mother, Plaintiff Catherine Davis, requested a § 504 Plan to accommodate R.D.'s Chilblains. *Id.*, ¶ 72. Specifically, Davis requested that CSES provide R.D. with indoor recess when weather conditions were wet or under 55 degrees. *Id.*

ORDER – 1

Instead of providing R.D. with a § 504 Plan, CSES provided R.D. with an "Individualized Health Plan," (IHP) that would nonetheless have the requested accommodations. *Id.*; Dkt. # 39-1. However, R.D. does not recall having indoor recess during kindergarten despite many days under 55 degrees. Dkt. # 43, ¶ 2. In April 2013, R.D.'s fingers were riddled with open sores and her toes became swollen and too painful to walk. Dkt. # 39, ¶ 72. Davis states that the kindergarten teacher did not seem aware that R.D.'s IHP called for her to be insider for recess when there was inclement weather. *Id.*

In September 2013, before R.D. started first grade, Davis attended a meeting at CSES about R.D's § 504 Plan. *Id.*, ¶ 73. This time, CSES provided Davis with a one-page document, entitled "§ 504 Plan," that permitted R.D. to receive indoor recess in keeping with the previous year's IHP and doctor's notes concerning her Chilblains. *Id.* R.D. states that she started having indoor recess during the first grade. Dkt. # 43, ¶ 2.

When she was in third grade, R.D. claims that she was harassed and bullied by another student, D.H. *Id.*, ¶ 6. In December 2015, R.D. came home from school with bruises on her face and thigh. Dkt. # 39, ¶ 78. R.D. claims that she suffered the bruises when she was carried down the hallway by D.H., who later hit her in the face with a book. Dkt. # 43, ¶ 6. When school resumed after the holidays, around January 5, 2016, Davis emailed R.D.'s third grade teacher about the incident and asked her to separate the students. Dkt. # 39-9.

However, R.D. continued to have issues with D.H. after the new year. Dkt. # 43, ¶3. She claims that D.H. yanked her out of class numerous times to work out their issues. *Id.*, ¶ 6. R.D. says that she became scared to go to school because of negative interactions with D.H. and told this to one of the CSES teachers. Dkt. # 43, ¶ 4. After hearing about R.D.'s comments, CSES's school counselor met with R.D. and D.H. about their ongoing issues. *Id.*

Plaintiffs claim that the harassment, intimidation and bullying (HIB) continued into

ORDER – 2

June 2016, when Catherine Davis witnessed D.H shove R.D. Dkt. # 39, ¶78.1; Dkt. # 39-13. Davis again emailed R.D.'s third grade teacher, noting there were "repeated offenses" of D.H. being forceful with R.D. *Id.* The teacher responded that R.D. stayed inside at recess for most of the winter and spring months so there were no interactions between D.H. and R.D. during that time. Dkt. # 39-14.

During the summer, in July 2016, Davis contacted CSES's principal, Heather Frazier, to set up a meeting regarding the alleged HIB and R.D.'s § 504 accommodations for the upcoming fourth grade school year. Dkt. # 39, ¶ 88. Two meetings eventually took place, one on August 5, 2016 and one on September 1, 2016. Dkt. # 21, ¶ 5; Dkt. # 39, ¶¶ 91, 94. R.D. attended the August 5th meeting and detailed alleged instances of physical bullying by D.H. Dkt. # 43, ¶ 8. Following the meeting, Frazier initiated an investigation into R.D.'s HIB claims against D.H. Dkt. # 21, ¶ 5. During the September meeting, the parties discussed a "Support Plan," under which R.D. and D.H. would no longer be in the same class and would not be allowed to interact at school together. Dkt. # 39, ¶ 94, 95. CSES also assigned R.D. a paraeducator to assure that R.D. and D.H. were kept separate during recess and lunch. Dkt. # 21-1; Dkt. # 39, ¶ 94, 95. As for the § 504 accommodations, R.D.'s plan was revised to include supervised inside recess with a variety of activities, including "gross motor" activities. Dkt. # 39-5.

Plaintiffs claim that the "Support Plan" to address separating D.H. and R.D. was never finalized and, in October 2016, they subsequently removed R.D. from CSES pending the outcome of the HIB investigation. Dkt. # 39, ¶¶ 101, 102. The investigation was completed around January 2017 and found that there was insufficient evidence of HIB. Dkt. # 40-14. Davis states that CSES failed to explain whether the allegations made by R.D. were found to be factual or what the processes were for appeal. Dkt. # 39, ¶ 103. After R.D. returned to school in January 2017, she states that she stayed inside a lot for recess because of the weather. Dkt. # 43, ¶ 10. She claims that during recess she sat under a flight of stairs every day. Dkt. # 19-1 at 10. After R.D. told her parents about where she

ORDER – 3

was spending recess, they removed her from CSES on March 29, 2017. Dkt. # 39, ¶ 108.

On June 25, 2018, R.D. and her parents Catherine Davis and Sean Davis (the Davis's) filed suit against Defendant Lake Washington School District (the District) alleging, among other claims,[1] discrimination against R.D. on the basis for her Chilblains disability in violation of the Americans with Disabilities Act (ADA) and Rehabilitation Act of 1974 (section 504). Dkt. # 1-1. Plaintiffs also allege negligence and loss of consortium claims based on harassment, intimidation, and bullying experienced by R.D. at CSES. *Id.* On July 10, 2018, the action was removed to federal court. Dkt. # 1. On April 8, 2019, LWSD moved for summary judgment and Plaintiffs opposed. Dkt. ## 18, 37. The motion is now before the Court.

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for

---

[1] After the District moved for summary judgment, Plaintiffs filed a notice of voluntary partial withdrawal of their section 1983 and negligent retention and supervision claims. Dkt. # 47. Because the notice comes after the District moved for summary judgment, Plaintiffs cannot voluntarily dismiss a claim absent a court order. *See* Fed. R. Civ. P. 41(a)(2). Therefore, the Court construes Plaintiffs' notice as a motion for such an order and **GRANTS** the motion. Plaintiffs' section 1983 and negligent retention and supervision claims are dismissed without prejudice.

ORDER – 4

trial in order to defeat the motion. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## IV. DISCUSSION

The District moves for summary judgment on R.D.'s claims for disability discrimination under section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (ADA). Dkt. # 18. The District further contends that it is entitled to summary judgment on R.D.'s negligence claim as well as the Davis's loss of consortium claim. *Id.* Before turning to the merits of the District's motion, the Court address the parties' motions to strike certain evidence.

### A. Motions to strike

In response to Plaintiffs' opposition brief, the District objected to certain evidence and moved to strike certain declarations on hearsay and untimeliness grounds. Dkt. # 48. The Court agrees that certain portions of the Albert Declaration (Dkt. # 38) and the Abram-Profeta Declaration (Dkt. # 45) are either inadmissible or include hearsay and will not be

ORDER – 5

considered for the truth of the matter asserted.[2] Fed. R. Evid. 801. The Court otherwise denies the District's motion.

Similarly, in response to the District's reply brief, Plaintiff's counsel filed a surreply moving to strike certain statements. Under Local Civil Rule 7(g), a party that requests to strike material contained in a reply brief must file a notice of intent to file a surreply as soon after receiving the reply brief. This was not done here. The parties are hereby on notice that failure to comply with the rules of this Court will not be tolerated. Upon review of Plaintiffs' motion to strike, the Court denies the motion.

### B. ADA and Section 504 claims

There is no significant difference in the analysis of rights and obligations created by the ADA and Section 504 of the Rehabilitation Act. *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002). A plaintiff bringing suit under section 504 or Title II must how: (1) she is a qualified individual with a disability; (2) she was denied "a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services;" (3) she was denied the benefits of the program by reason of the disability; and (4) the school receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim). *A.G. v. Paradise Valley Unified School Dist. No. 69*, 815 F.3d 1195 (9th Cir. 2016); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010). Here, R.D argues that the District failed to provide her with certain indoor recess accommodation and thus failed to provide her with a "free, appropriate, public education" (FAPE). Dkt. # 37 at 17 (citing 34 C.F.R. § 104.34). Before addressing the reasonable

---

[2] The Court strikes the following Paragraphs from the Albert Declaration: Dkt. # 38, ¶¶ 6, 8. Paragraph 6 to the Albert Declaration attaches an unsigned declaration which is inadmissible to oppose a summary judgment. *See* Fed. R. Civ. P 56(e). Because the Amended Albert Declaration contains the same information and material, the same rulings apply. *See* Dkt. # 46. As for the Abram-Profeta Declaration, the Court finds the following paragraphs to be hearsay and will not consider them for the truth of the matter asserted: Dkt. # 45, ¶¶ 3, 7 (regarding what her son, O.A.P., told her occurred at school). The Court also strikes Paragraph 6 of the Abram-Profeta Declaration as improper lay opinion. Fed. R. Evid. 701.

ORDER – 6

accommodation issue, which the Court finds dispositive, the Court turns to the District's arguments on statute of limitation and "deliberate indifference".

### i. Statute of Limitations

The District first argues that any ADA or § 504 claims alleged prior to June 18, 2015 are time-barred. Dkt. # 18 at 2. Neither the ADA nor § 504 have their own statute of limitations. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (ADA); *Alexopulos v. S.F. Unified Sch. Dist.*, 817 F.2d 551, 554 (9th Cir. 1987) (§ 504). In such cases, the forum state's most analogous statute of limitations applies. *Dep't of Educ. v. Carl D.*, 695 F.2d 1154, 1157 (9th Cir. 1983).

The parties do not dispute that Washington's general statute of limitations for personal injury claims is three years. RCW § 4.16.080(2). However, R.D. argues that the Revised Code of Washington tolls the statute of limitations for claims brought by children until they reach the age of the majority. Dkt. # 37 at 19. But when a federal court borrows the applicable statute of limitations from state law, it borrows "also the rules for its tolling, unless to do so would be 'inconsistent with the federal policy underlying the cause of action under consideration.' " *Alexopulos*, 817 F.2d at 555 (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980)). In *Alexopulos*, the Ninth Circuit explained the following when it found the plaintiff's Education of the Handicapped Act (EHA) claims to be time-barred:

> Congress' desire to obtain timely and appropriate education for handicapped children by conferring substantial substantive and procedural rights on parents and guardians on behalf of their children clearly indicates that it did not intend to authorize filing of claims on behalf of or by the children many years after the alleged wrongdoing occurred. It is reasonable to assume that Congress expected and intended the child's representative to file actions and apply for hearings on his behalf near the time the contested event occurred. The child may not later come before a court and invoke the tolling provisions of state statutes.

817 F.2d at 555.

ORDER – 7

Although *Alexopulus* dealt with claims under the EHA, which is the IDEA's predecessor, district courts within the circuit have applied the same rationale to denial of FAPE claims brought under the ADA and § 504. *See, e.g.*, *McIntyre v. Eugene School District 4J*, No. 6:18-cv-00768-JR, 2018 WL 7254251 (D. Or. Sep. 12, 2018); *A.T. by and through L.T. v. Dry Creek Joint Elementary School District*, No. 2:16–cv–02925–MCE–DB, 2017 WL 2654854 (E.D. Cal. Jun. 20, 2017); *Mullin v. Las Lomatas Elem. Dist.*, No. 03–5268 MMC, 2004 WL 2848021 (N.D. Cal. 2004). This Court also finds *Alexopulus* reasoning persuasive. Accordingly, Plaintiff's claims occurring before June 25, 2018, or three before prior to the action, are time-barred.

### ii. Deliberate Indifference

The District also seeks dismissal of the ADA and § 504 claims because R.D. cannot prove deliberate indifference. Failure to prove deliberate indifference prevents plaintiffs from obtaining damages. *Mark H.*, 513 F.3d at 938 (explaining that deliberate indifference is action or inaction despite knowledge of the substantial likelihood of resulting harm to a federal right). However, the District makes no argument about the standard applicable to Section 504 claims for equitable relief. *See Bonner v. Lewis*, 857 F.2d 559, 566 (9th Cir. 1988). Because R.D. may still be entitled to equitable relief, a finding that the District did not act with deliberate indifference will not on its own defeat her ADA and section 504 claims.

"Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' " *Patel v. Kent School Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). The state actor must "recognize[ ] [an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.* at 899 (internal quotation omitted). In other words, the defendant "knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it." *Id.* at 900. The deliberate-indifference inquiry should go to the jury if any rational

ORDER – 8

factfinder could find this requisite mental state. *See Wood*, 879 F.2d at 588 & n. 4.

The Court finds that no reasonable jury could find that the District was deliberately indifferent. The record shows that Catherine Davis met with CSES administrators to discuss changes to R.D.'s § 504 plan, including more supervision and gross motor activity. Dkt. # 39, ¶94. CSES responded by assigning R.D. a "one-on-one helper" to supervise R.D. during recess, considered several options for indoor recess activities, including having R.D. join a separate physical education class in session, and recommended a standing monthly meeting to review support for R.D. Dkt. # 21; Dkt. # 21-1; Dkt. # 50 at 2. Plaintiffs dispute that R.D. was offered physical exercise when she had indoor recess and claim the evidence shows that R.D. played with blocks under a dark foyer and was frequently left unsupervised. Dkt. # 19-1 at 10, 11; Dkt. # 39, ¶ 105 (noting that on one occasion R.D.'s helper arrived eight minutes late and missed half of recess). However, the evidence taken together, even when viewed in the light most favorable to Plaintiffs, fails to show that the District harbored the requisite mental state for deliberate indifference. *Patel*, 648 F.3d at 976; *Snell v. North Thurston Sch. Dist.*, 2015 WL 6396092 (W.D. Wash. Oct. 21, 2015) (genuine issue of material fact raised where school refused to provide one-on-one nursing care for insulin-dependent minor). Accordingly, Plaintiff is not entitled to monetary damages on its ADA or § 504 claims.

### iii. Reasonable accommodation

The District also claims R.D. cannot show that she was denied a reasonable accommodation and thus her ADA and § 504 claims fail as a matter of law. In the school context, a plaintiff may show a denial of a reasonable accommodation by showing that the federally funded program denied her services that she needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations." *A.G.*, 815 F.3d at 1204. A plaintiff can also satisfy the requirement by showing that the program denied her meaningful access to public education through another means, such as by violating a regulation that implements section 504's

ORDER – 9

prohibitions. *Id.*

The United States Department of Education (DOE) regulations implementing Section 504 include a requirement that disabled children in schools receiving federal funds be provided a "free appropriate public education." 34 C.F.R. § 104.33. The regulations further require that, "[i]n providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess periods, and the services and activities set forth in § 104.37(a)(2), a recipient shall ensure that handicapped persons participate with nonhandicapped persons in such activities and services to the maximum extent appropriate to the needs of the handicapped person in question." 34 C.F.R. § 104.34(b). Therefore, the relevant baseline benefit here is R.D.'s "meaningful access" to public school recess with nondisabled persons.

The District claims that there is no evidence that R.D. was denied any benefits of FAPE and further adds that it addressed R.D.'s health needs by keeping her inside for recess when it was cold or wet. *See* Dkt. # 18 at 6-7; Dkt. # 48 at 4. Moreover, the District argues that the accommodations R.D. claims were not provided, such as gross motor activity and "supervision," were not medically necessary to deal with her Chilblains and were added to satisfy Catherine Davis. *Id.* R.D. contends that conflicting testimony regarding whether she was supervised or received exercise precludes finding of summary judgment. Dkt. # 37 at 20.

Reasonableness of an accommodation "depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to [enjoy meaningful access to the program.]" *Vinson*, 288 F.3d at 1154. Here, the record shows that R.D.'s initial § 504 plan called for CSES to accommodate R.D.'s Chilblains by keeping her warm and dry during recess and physical education. Dkt. # 39-2; Dkt. # 39-3. The record further indicates that the supervision and gross motor activity accommodations were added in September 2016 at the request of Catherine Davis. Dkt. # 39, ¶ 29. Dkt. # 39-5; *see also*

ORDER – 10

Dkt. # 37 at 11 (noting that "[Mrs. Davis] wanted R.D. to receive exercise"). Setting aside the issue of compliance with the § 504 plan, R.D. fails to show that "supervision" and "gross motor activity" were necessary accommodations, such that failing to provide them kept her from participating in recess with nondisabled students. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) (noting the distinction between a reasonable and necessary accommodation under the ADA and an accommodation that may be reasonable but unnecessary); *see also, e.g.*, *A.M ex rel. J.M. v. NYC Dept. of. Educ.*, 840 F.Supp.2d 660 (E.D.N.Y. 2012) (claims that school district discriminated against diabetic student by not heating up his homemade lunch failed where evidence did not show that he was excluded in any way from eating with other non-disabled peers during the lunch period). In fact, neither accommodation concerns R.D.'s location at recess relative to other students. Although R.D.'s parents understandably wanted her to be supervised or receive exercise at school, this does not mean that the District was obligated under the *disability discrimination statutes* to address these concerns. *Id.* Because R.D. fails to raise a genuine factual dispute as to whether her requested accommodations were necessary, the Court **GRANTS** the District's motion.

### C. Negligence claim

The District argues that it is entitled to judgment as a matter of law on R.D.'s negligence claim because it had no notice of foreseeable harm and therefore had did not breach its duty to R.D. Dkt. # 18 at 21.

To establish negligence, the plaintiff must show that the defendant owed the plaintiff a duty, that the duty was breached, and the breach was the proximate cause of the plaintiff's injury. *N.L. v. Bethel School Dist.*, 348 P.3d 1237 (Wash. App. 2015). Schools have a duty to protect students in their custody and control from reasonably foreseeable harm. *Id.* at 1242. "A school district's duty 'is to anticipate dangers which may reasonably be anticipated, and to then take precautions to protect the pupils in its custody from such dangers.' " *Id.* (quoting *McLeod v. Grant County School Dist.*, 255 P.2d 360, 361 (Wash.

ORDER – 11

1953). The particular sequence of events that led to the plaintiff's injury need not be foreseeable for a defendant school district to owe a duty to its students. *Id*.

R.D. maintains that the harm was foreseeable because the District knew that D.H. had a history of aggressive behavior. Dkt. # 37 at 4. R.D. provides evidence that CSES administrators and teachers knew that D.H. had been physical at school and that D.H. had previously put D.H. on a "separation plan" from other students. Dkt. # 41-11 at 3; Dkt. # 41-6 at 3; Dkt. # 41-10 at 9. R.D. also puts forth evidence that even after CSES became of aware of specific incidents involving R.D. and D.H., including where D.H. hit R.D. with a book, the two were left unsupervised during class and recess, allowing additional physical interactions to occur. Dkt. # 39-9; Dkt. # 43,¶ 2. While the District denies that its response R.D.'s concerns were inadequate, or that HIB occurred, courts in Washington have explained that summary judgment is inappropriate where there is sufficient evidence that the District had notice of the possibility of the specific harm inflicted. *See J.N.*, 871 P.2d at 1113 ("[W]here the disturbed, aggressive nature of a child is known to school authorities, proper supervision requires the taking of specific, appropriate procedures for the protection of other children from the potential for harm caused by such behavior."). As such, the Court finds there are material facts in dispute precluding summary judgment on R.D.'s negligence claim. The District's motion is **DENIED**.

### C. Loss of consortium claim

The District also moves for summary judgment on the Davis's loss of consortium claim for alienation of love and affection from a child. Washington recognizes a cause of action for the alienation of a child's affection. *Strode v. Gleason*, 510 P.2d 250 (Wash. App. 1973). In order to sustain this cause of action, a plaintiff must show (1) an existing family relationship; (2) a malicious or unjustifiable interference with the relationship by a third person; (3) an intention on the part of the third person that such malicious interference results in a loss of affection; (4) a causal connection between the third party's conduct and the loss of affection; and (5) resulting damages. *Id*. In this case, the Court finds summary

ORDER – 12

judgment for the Defendant appropriate. There is no evidence in the record to support the requisite intent on the part of the District to cause a malicious or unjustified interference with Plaintiffs' relationship. In fact, the evidence on the record contradicts such a finding. Dkt. # 21; Dkt. # 21-1; Dkt. # 50 at 2. Accordingly, the Court **GRANTS** Defendants' motion.

## V. CONCLUSION

For the reasons above, the Court **GRANTS in part** and **DENIES in part** Defendant's motion. Dkt. # 18.

DATED this 13th day of June, 2019.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 13